PJG Consent SSA (Rev 11/18/20)                                                                                                           Virginia McEntire Pearce

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Virginia McEntire Pearce, | ) | C/A No. 0:20-1623-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER ON PLAINTIFF'S APPEAL** |
| v. | ) | **FROM THE SOCIAL SECURITY** |
| | ) | **ADMINISTRATION'S DENIAL OF** |
| Andrew Saul, Commissioner of the Social Security Administration, | ) ) ) | **SOCIAL SECURITY BENEFITS** |
| | ) | ☐ Affirmed |
| Defendant. | ) ) | ☒ Reversed and Remanded |

  This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☒ Supplemental Security Income ("SSI")

  Application date: June 9, 2017  Plaintiff's age at filing: 49

☒ Disability Insurance Benefits ("DIB")

  Date last insured: March 31, 2020

☐ Other:

Plaintiff's Year of Birth: 1967

Plaintiff's alleged onset date: January 5, 2017

**Part II—Social Security Disability Generally**

  Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

  A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v.

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  March 13, 2019

In applying the requisite five-step sequential process, the ALJ found:

Step 1:    Plaintiff was engaged in substantial gainful activity during the relevant time period:
☐ Yes  ☒ No

Step 2:    ☒ Plaintiff has the following severe impairments:
cervical and lumbar degenerative disc disease, status post lumbar laminectomy (20 CFR 404.1520(c) and 416.920(c)).

☐ Plaintiff does not have a severe impairment.

Step 3:    ☒ Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Plaintiff's Residual Functional Capacity is as follows:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently sit, stand and walk; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to hazards such as unprotected heights.

☒ Plaintiff could return to his/her past relevant work as a waitress, office helper, and restaurant manager.

Step 5:    ☐ Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒ In the alternative, if Plaintiff could not return to his/her past relevant work, there are jobs in the national economy that Plaintiff can perform, as follows:

a counter clerk (DOT# 249.366-010, light exertional level, SVP 2, with approximately 448,000 jobs available in the national economy); a housekeeper (DOT# 323.687-014, light exertional level, SVP 2, with approximately 880,000 jobs available in the national economy); and a parking lot attendant (DOT# 915.473-010, light exertional level, SVP 2, with approximately 120,000 jobs available in the national economy).

Date of Appeals Council decision:  February 26, 2020

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek, 139 S. Ct. at 1154 (citation omitted). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**Part V—Issues for Judicial Review**

I. The ALJ failed to properly assess medical source opinion evidence.

II. The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

III. Evaluation of subjective symptomology of the Plaintiff.

**Oral Argument**

    ☒ **Held on December 8, 2020.**

    ☐ Oral argument not necessary for disposition

**Summary of Reasons**[1]

Plaintiff first challenges the ALJ's evaluation of the opinion evidence from her treating neurosurgeon, Dr. Joseph Cheatle. The parties agree that effective March 27, 2017 the federal regulations were amended with regard to applications filed on or after March 27, 2017 to rescind the provision that a treating physician opinion must be accorded controlling weight in certain circumstances. However, although the new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources," the ALJ is still directed to weigh them pursuant to the same factors previously provided for weighing opinion evidence. See 20 C.F.R. §§ 404.1520c; 416.920c. The

---

[1] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017 and are applicable to the instant claims because they were filed on or after March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 416.913, 404.1527, 416.927.

ALJs are instructed to consider and evaluate the persuasiveness of the opinion evidence considering supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion.  Id.  Supportability and consistency are the most important factors to consider, and an ALJ must explain how these factors are considered.  The ALJ may, but is not required to, explain how the other factors are considered.  Id.

Although a treating physician's opinion is no longer entitled to controlling weight, the ALJ's reasons for finding the opinion of a medical source unpersuasive still must be supported by substantial evidence.[2]  The United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."  Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, __ F.3d __, 2020 WL 7331494, at *9 (4th Cir. Dec. 14, 2020).  Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion."  Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p.  Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated.  Mascio, 780 F.3d 636-37.  The ALJ must "build an accurate and logical bridge from the evidence to his conclusions."  Monroe, 826 F.3d at 189.

---

[2] The Commissioner suggests that to demonstrate errors under the substantial evidence standard of review the evidence must "compel" a conclusion to the contrary.  However, the cases he relies on for this heightened standard of substantial evidence appear to be analyzing the Immigration Code, which directs such a standard.

Thus, under the new regulations, a treating physician's opinion no longer must be given controlling weight.  However, an evaluation of the persuasiveness of any medical opinion must nevertheless be supported by substantial evidence.  A recent case from the United States Court of Appeals for the Fourth Circuit, Arakas v. Commissoner, __ F.3d __, 2020 WL 7331494, at *9 (4th Cir. Dec. 14, 2020), is instructive.  Although the Arakas Court was applying the former regulations and the so-called Treating Physician Rule, it illustrates when an ALJ's decision should be considered unsupported by substantial evidence.  Cherry-picking the records to accept only evidence that weighs against a finding of disability is not permitted, and specious inconsistencies cannot reasonably support a rejection of medical opinions or other evidence.  Also, while the ultimate conclusion about whether a claimant is disabled is reserved to the Commissioner, a medical opinion regarding limitations that would support such a conclusion must be considered.  See, e.g, Arakas, 2020 WL 7331494, at *9-10, *19.

Bearing all that in mind, the court is unable to determine whether the ALJ's evaluation of Dr. Cheatle's November 29, 2018 opinion is supported by substantial evidence.  This opinion included limitations that would prevent Plaintiff from performing the demands of even sedentary work eight hours a day five days a week.  The ALJ summarized and evaluated Dr. Cheatle's opinion as follows:

> In November 2018, Joseph Cheatle, M.D., the claimant's treating neurosurgeon, completed a medical source questionnaire, indicating that the claimant had been diagnosed with a schwannoma intradural lesion in May 2017, confirmed by MRI and pathology results.  Dr. Cheatle indicated that the claimant's ability to walk, stand, or sit was affected by her impairment.  Although he indicated that the claimant is able to walk, stand, and sit each for less than one hour during an eight-hour workday, Dr. Cheatle noted that he was unable to determine the claimant's ability to walk, stand, and sit because she needed a physical therapy evaluation.  Dr. Cheatle also indicated that the claimant was unable to work eight hours per day, five days per week.  The claimant was limited to lifting and/or carrying no more than 10 pounds occasionally.  He also indicated that she was restricted in climbing stairs or ladders and in bending.  Dr. Cheatle noted that the claimant would require

eight 30-minute rest periods during the day and that she was likely to be absent from work more than four days per month as a result of her impairments or treatment. Dr. Cheatle indicated that the claimant was incapable of even "low stress" jobs. He indicated that the claimant was unable to perform the minimal standing/walking required by sedentary work, or was unable to do prolonged sitting; however, he also indicated that she could perform sedentary work at less than four hours total per day, and that she could perform sedentary work (Exhibit 20F). I do not find Dr. Cheatle's opinion to be persuasive. The limitations set forth in this opinion are not supported by Dr. Cheatle's findings on examination of the claimant and are inconsistent with the remaining objective medical evidence in the record. Further, the claimant did not complain of such extreme activity limitations during her visits with treatment providers. Although the record reflects an exacerbation of the claimant's symptoms immediately prior to her back surgery, treatment records reflect that the claimant's pain significantly improved following surgery and within less than 12 months of her original complaints. Dr. Cheatle's opinion is also internally inconsistent; he noted that he could not assess the claimant's ability to sit, stand and walk, but also indicated she could do these activities for less than an hour each during an eight-hour workday. Additionally, he indicated that the claimant could perform sedentary work full time, sedentary work part time, and that she was unable to perform even sedentary work. Based on the internal inconsistencies, inconsistencies with his treatment notes, and inconsistencies with the record as a whole, Dr. Cheatle's opinion is found to offer little insight into the claimant's residual functional capacity.

(Tr. 25-26.)

As pointed out by Plaintiff, the ALJ appears to have cherrypicked the evidence and ignored the evidence supporting Dr. Cheatle's opinion. For example, Plaintiff argues that the ALJ failed to consider that Dr. Cheatle's opinion was consistent with (1) his notes advising Plaintiff to not lift over 10-15 pounds post-surgery for excision of an intradural intramedullary spinal cord lesion (Tr. 370-72); (2) treatment notes that she was experiencing pain two months post-surgery and indicating an increase in her Neurotin dosage (Tr. 368); (3) notes showing that six months post-surgery Dr. Cheatle recommended injections for continued pain and an MRI indicated moderate L3/L4 and L4/L5 annular bulges with moderate foraminal narrowing and ventral annular root contact (Tr. 613-14); and (4) notes indicating diminished sensation in her left upper and lower extremities (Tr. 822-23). Plaintiff similarly challenges the ALJ's summary statement that Dr.

Cheatle's opinion is inconsistent with the remaining objective evidence, pointing to records documenting left lower extremity weakness, limited range of motion, and required seated rest breaks (Tr. 574); antalgic gait and left lower extremity weakness (Tr. 559, 562, 574); limited lumbar range of motion (Tr. 556); indications of required brief seated rest breaks (Tr. 550); slow gait, moderate difficulties getting off the exam table and out of a chair, decreased range of motion of the lumbar spine, an inability to do the heel or toe walk, reduced muscle strength in the left lower extremity, diminished reflexes, and decreased sensation (Tr. 598-99); an MRI showing moderate foraminal narrowing and ventral annular root contact (Tr. 747); restricted range of motion of the lumbar spine and reduced strength in the hip abduction left 4/5, right 4-/5, left gluteals, 3+/5 and right gluteals 4/5 (Tr. 761); spasms and tenderness of the paravertebral muscles on the right side (Tr. 641, 643); and an October 2018 MRI demonstrating impingement of the left L5 nerve root by the facet arthropathy (Tr. 725).  Additionally, Plaintiff challenges the ALJ's summary statements that Plaintiff did not complain of such extreme activity limitations during her visits with treatment providers and that treatment records reflect that the claimant's pain significantly improved following surgery and within less than 12 months of her original complaints, pointing to the following records:  Tr. 425 (June 12, 2017, reporting worsening physical functioning with only a 10% improvement in her activities of daily living); Tr. 435 (June 30, 2017, reporting  40% improvement in her activities of daily living); Tr. 572 (July of 2017, pain levels as high as 8 out of 10 with symptoms that forced her to sit or lie down and rest); Tr. 574 (reporting decreased endurance and a decline in steadiness); Tr. 549 (August 17, 2017, reporting being discouraged because she did not feel her pain or symptoms were any better and her overall condition was unchanged; she was tired easily and was forced to take many rest breaks throughout the day); Tr. 809 (September 6, 2017, reporting nerve symptoms in her extremities, reporting

stiffness and soreness); Tr. 367 (reporting pain everywhere); Tr. 805 (reporting that she felt worse and was only able to do light household chores through pacing); Tr. 597 (September 25, 2017, reporting that she felt worse than she did 8 weeks after surgery); Tr. 789 (October 2017, reporting her overall condition was unchanged); Tr. 786 (November 2017, reporting being discouraged because she was still very limited with a lot of activities five months after her surgery); Tr. 80 (March 28, 2018, noting Plaintiff had increasing pain since October 2017); Tr. 828 (April 2018, reporting back pain and radicular symptoms with leg weakness and difficulties walking); Tr. 621 (April 2018, Plaintiff's pain ranged from a 5 to a 10 out of 10 and reporting some days her pain was unbearable); Tr. 761 (April 25, 2018, reporting her medications only partially relieved her symptoms and her pain ranged from a 4 to an 8 and she had good days and bad days); Tr. 761 (June 20, 2018, noting that Plaintiff's pain had been worsening since October 2017); Tr. 652 (June 28, 2018, reporting that she was frustrated that one year later she was still suffering from back pain); Tr. 650 (reporting her pain symptoms were continuous and not completely eliminated by pain medications).

  Based on all the foregoing evidence, the court cannot find the ALJ's reasons for finding Dr. Cheatle's opinion unpersuasive to be supported by substantial evidence. Although the ALJ appears to have considered the appropriate factors, the ALJ has failed to explain how the evidence supports her conclusion and meaningful review is frustrated. See Monroe, 826 F.3d at 190; Mascio, 780 F.3d 636-37. Therefore, the court is constrained to remand this matter for further consideration of Dr. Cheatle's opinion.

  In light of the court's decision to remand for further consideration, the court need not address Plaintiff's remaining arguments, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to

PJG Consent SSA (Rev 11/18//20)                                                                                          Virginia McEntire Pearce

address claimant's additional arguments). Moreover, if necessary, Plaintiff may present her remaining arguments concerning the ALJ's alleged errors on remand.

## ORDER

☐ **Affirmed for the reasons stated on the record. Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☒ **Reversed and remanded pursuant to ☒ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐ **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

_____
December 22, 2020                    Paige J. Gossett
Columbia, South Carolina            UNITED STATES MAGISTRATE JUDGE